# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **VALERIE LAURENT** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN MCHUGH, SECRETARY** | : | |
| **OF THE ARMY** | : | **NO. 2004 - 0024** |

## MEMORANDUM OPINION

**Savage, J.**                                                                                           **March 29, 2010**

In this Title VII action alleging sexual harassment in a hostile work environment, defendant John McHugh, Secretary of the Army ("Secretary")[1], has moved for summary judgment. He contends that the undisputed facts show that there was a single incident of improper behavior by a Virgin Islands Army National Guard member, who was not the plaintiff's supervisor, that was addressed immediately after it was reported. Therefore, the Secretary argues, he is entitled to judgment as a matter of law because the plaintiff has not established the necessary elements of her claim, specifically a hostile work environment and respondeat superior liability.

Opposing summary judgment, plaintiff Valerie Laurent ("Laurent") argues that she was subjected to sexual harassment at the hands of a higher ranking co-worker who was her supervisor. She contends that the employer knew or should have known of his propensity to engage in sexually inappropriate behavior and failed to take action to prevent the incident, giving rise to respondeat superior liability.

Laurent has asserted federal constitutional claims and a variety of territorial claims.

---

[1] John McHugh has been substituted in place of the previously named secretary, Francis J. Harvey, pursuant to Fed. R. Civ. P. Rule 25(d)(1).

She had named both the Secretary and the National Guard Bureau ("NGB") as defendants. In ruling on the defendants' motion to dismiss, the Honorable Raymond L. Finch dismissed all claims against the NGB and all claims, except for the Title VII action for sexual harassment in a hostile work environment, against the Secretary. *Laurent v. Geren,* No. 2004-024, 2008 WL 4587290 (D.V.I. Oct. 10, 2008). Thus, the only remaining claim is for Title VII sexual harassment in a hostile work environment against the Secretary.

**Facts**

Laurent was a full time employee of the Virgin Islands Army National Guard and held the rank of Staff Sergeant. She also held a civilian position in the Combined Support Maintenance Shop.

On January 3, 2002, without Laurent's permission or solicitation, Alphonso Romney ("Romney"), a co-worker holding the rank of Sergeant First Class, kissed her neck, rubbed his face on her stomach and grabbed her breast. Laurent reported the incident to her supervisor who immediately contacted the National Guard's State Equal Employment Manager, Eugenie Santos, who met with Laurent later that day. At that meeting, Laurent agreed to accept an apology from Romney.

On January 7, 2002, Laurent filed a formal complaint with the NGB alleging sexual harassment by Romney. The NGB held a fact finding hearing on September 10, 2002. In addition to Laurent, two other women also testified at the hearing, each claiming to have been harassed by Romney prior to the Laurent incident. Neither of the other women had previously reported the earlier incidents to their supervisors or anyone else at the NGB.

On December 22, 2003, the NGB issued a decision finding that Laurent had been subjected to sexual harassment or unwelcomed physical contact of a sexual nature. It

further found that Romney had a propensity to engage in inappropriate sexual behavior. However, it also found no hostile or abusive work environment because the incident was isolated and management immediately acted to resolve the question.

**Legal Standard**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the mov[ing party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In examining the motion, we must view the facts in the light most favorable to the nonmovant and draw all reasonable inferences in her favor. *Conopco, Inc. v. U.S.*, 572 F.3d 162, 165 (3d Cir. 2009). This standard is applied with "added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Stewart v. Rutgers, The State Univ.*, 120 F.3d 426, 431 (3d Cir. 1997) (quoting *Robinson v. PPG Indus., Inc.*, 23 F.3d 1159, 1162 (7th Cir. 1994).

The party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact. Fed. R. Civ. P. 56(c). Once the movant has done so, the opposing party cannot rest on the pleadings. To defeat summary judgment, she must come forward with probative evidence establishing the *prima facie* elements of her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which she bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). An inference based upon speculation or conjecture does not create a material fact. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990) (citing *Blackston v. Shook & Fletcher Insulation Co.,* 764 F.2d 1480, 1482 (11th Cir. 1985)).

In an employment discrimination case, "the burden of persuasion on summary judgment remains unalterably with the employer as movant." *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008) (citation omitted). Hence, the employer must persuade the court that even if all of the inferences that could reasonably be drawn from the evidentiary materials of record were viewed in the light most favorable to the plaintiff, no reasonable jury could find in the plaintiff's favor. *Id.*

**Analysis**

To state a hostile work environment claim, a plaintiff must allege: (1) she suffered intentional discrimination because of her gender; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person of the same gender in that position; and (5) a basis for respondeat superior liability. *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), *abrogated on other grounds by Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006); *Pa. State Police v. Suders*, 542 U.S. 129, 133 (2004).

The parties do not dispute that Laurent suffered intentional discrimination because of her gender and that it detrimentally affected her as it would any other woman. They dispute both whether the inappropriate conduct was severe or pervasive and whether there is a basis for holding the defendant, who did not engage in the offensive conduct, liable.

In determining whether harassment is sufficiently severe or pervasive to create a hostile work environment, factors considered include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening. . .or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance." *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 23 (1993). Evidence of an isolated or single incident of

4

harassment, unless extremely serious, does not establish a hostile work environment. *Carver v. City of Trenton*, 420 F.3d 243, 262-63 (3d Cir. 2005) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

There is no dispute that Romney's offensive behavior involving Laurent was a single isolated incident. Nothing inappropriate occurred before or after the January 3, 2002 incident. This single occurrence, although clearly inappropriate, embarrassing and insulting, is not sufficiently serious to establish a hostile work environment. *See Fahnbulleh v. Carelink Community Support Services, Inc.,* No. 08-5055, 2009 WL 4591712 * 5 (E.D. Pa. Dec. 4, 2009) (Schiller, J.) (co-worker's inappropriate comments along with a single incident of inappropriate physical contact insufficient to establish hostile work environment; and collecting cases). Thus, Laurent has not shown that she was subjected to severe or pervasive discrimination.

Even if Laurent had shown that she was subjected to severe discrimination, she has not established a basis for vicarious liability. The vicarious liability analysis differs depending on whether the harasser is a supervisor or a co-worker. When the employee's supervisor creates a hostile work environment, the employer may be held vicariously liable where the harassment culminates in a tangible adverse employment action, such as a discharge, demotion or undesirable reassignment. *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 765 (1998). When a non-supervisory co-worker harasses an employee, liability attaches only where the employer, despite having had actual or constructive notice of the harassment, failed to take prompt remedial action. *Huston v. The Procter & Gamble Paper Products Corp.,* 568 F.3d 100, 104 (3d Cir. 2009).

To qualify as a supervisor, an individual must have the authority to "'affect the terms

and conditions of the victim's employment.'" *Neely v. McDonald's Corp.,* Civ. No. 04-1553, 2007 WL 853478 *5 (W.D. Pa. March 20, 2007)(quoting *Parkins v. Civil Constructors of Ill. Inc.,* 163 F.3d 1027, 1034 (7th Cir. 1998)). This authority includes the ability to "'hire, fire, demote, promote, transfer, or discipline an employee.'" *Id.* (quoting *Parkins,* 163 F.3d at 1034).

Although Romney served in the same military unit as Laurent and held a higher rank, he was not her supervisor. He had no supervisory authority over her. He interfaced with her only one weekend a year during routine deployment as a co-worker. Romney was not in her chain of command. Laurent reported to Colonel Jesus Poupart in her civilian role, and to Major Eugene Canegata and Lieutenant Colonel Daryl Joshen in connection with her military duties.

Laurent has provided no evidence that Romney had the power to affect the terms of her employment. She bases her supervisor theory on her belief that Romney was responsible for processing her enrollment in training courses. According to Laurent, Romney had the authority to enroll her in certain training courses which were necessary for advancing her military career. She claims that after she reported the alleged harassment, Romney failed to timely enroll her in a requested course. However, the undisputed evidence shows that Romney's role as training officer was largely ministerial. He simply inserted enrollment requests into a computer system. He had neither the ability nor the authority to determine whether an individual was accepted into a particular course. Actual enrollment decisions were made at National Guard headquarters. Romney's limited ministerial role did not give him the authority to affect the terms of Laurent's employment. Thus, because Romney had no authority to hire, fire, demote, promote, transfer or

discipline Laurent, he does not qualify as her supervisor for the purpose of establishing vicarious liability.

Because Romney was not Laurent's supervisor, the Secretary may be found vicariously liable only if there is evidence of actual or constructive knowledge of Romney's propensity for sexual harassment. Although the NGB found that Romney had a propensity to engage in such offensive sexual behavior, there is no evidence that his supervisors or his superiors were aware of his proclivities prior to Laurent's reporting of the January 3, 2002 incident.

NGB relied upon two prior improper sexual harassment incidents involving two other women before the Laurent incident to conclude that Romney had the propensity to engage in sexually inappropriate behavior. However, the victims of the prior harassment admitted they had never reported the incidents. Consequently, because the two prior incidents are the only ones relied upon by Laurent, it is undisputed that the employer did not have prior knowledge of Romney's propensity to sexually harass co-workers.

Laurent complains that Romney was not disciplined. However, whether Romney was disciplined is not relevant to her claim. After Laurent reported the incident, the employer took immediate action. In fact, subsequent to Laurent's reporting the incident, there were no further offensive remarks or conduct. Had he continued to harass her, the failure to discipline would tend to demonstrate the lack of corrective action to prevent further harassment. Apparently, the action taken in response to Laurent's complaint was effective. Romney engaged in no further offensive behavior. In short, the employer took action to prevent Romney's offensive behavior after it first learned of his propensity to engage in such behavior.

**Conclusion**

Laurent has failed to produce evidence of severe or pervasive discrimination. Nor has she produced sufficient evidence from which a jury could conclude that the employer is vicariously liable. Therefore, because Laurent has failed to make out a *prima facie* case of a hostile work environment, the Secretary's motion for summary judgment will be granted.